**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MICHAEL PESEK,                  )
                                     )    **No. 10 C 3546**
             **Plaintiff,**     )
                                       )
      **v.**                     )    **Judge John J. Tharp**
                                       )
CATERPILLAR INC.,         )
                                       )
            **Defendant.**     )

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Caterpillar, Inc.'s motion for partial summary judgment as to Plaintiff Michael Pesek's claims of retaliation in violation of Title VII and the Illinois Human Rights Act ("IHRA"). For the reasons set forth below, Caterpillar's motion for partial summary judgment is granted and judgment is entered for Caterpillar on the portions of Counts II and IV of Pesek's Complaint alleging retaliation taking place after February 28, 2008.

**BACKGROUND**

Pesek is an employee of Caterpillar, working as an assembly and test specialist in its Joliet, Illinois, facility. Caterpillar's Statement of Uncontested Facts ("Doc. 61") ¶ 1. Pesek alleges that beginning in August 2007 Caterpillar supervisor Charity Klimkiewicz subjected him to sexual harassment. Cmplt. ¶¶ 11-23. Pesek further alleges that he complained about Klimkiewicz's harassing conduct to Caterpillar's human resource representatives, but that Caterpillar failed to take appropriate remedial action. *Id.* ¶¶ 24-29. Instead, Pesek alleges that Caterpillar terminated him on February 28, 2008, in retaliation for reporting Klimkiewicz's harassment. *Id.* ¶ 27.

Pesek thereafter filed two charges of discrimination with the Illinois Department of Human Rights ("IDHR"). First, in March 2008, Pesek filed a charge claiming that Klimkiewicz and Caterpillar retaliated against him for having filed a 2006 internal harassment complaint against several co-workers and supervisors. Doc. 61 ¶ 5. Then, in May 2008, Pesek filed a second charge of discrimination with the IDHR alleging that Caterpillar terminated his employment on February 28, 2008 after he refused and opposed Klimkiewicz's sexual advances. *Id.* ¶ 9.

In addition to filing the IDHR discrimination charges, Pesek also challenged his termination through his union. Cmplt. ¶ 30. After an arbitration regarding his termination, the arbitrator upheld Pesek's challenge, ruling that he was not terminated for just cause and awarding him reinstatement, back pay, and payment of unspecified "contractual benefits" to which Pesek would have been entitled absent the termination *Id.* ¶ 31; Doc. 57-7 at 13.

Pesek returned to work in October 2009, but he alleges that Caterpillar continued to retaliate against him after his reinstatement. *Id.* ¶¶ 33-37. Specifically, Pesek alleges that Caterpillar has taken six actions against him since February 28, 2008 that constitute unlawful retaliation:

> (1) refusing to correct his mailing address which caused critical correspondence to be sent to an incorrect address;
>
> (2) singling him out for a meeting on the day he returned to work to warn him against future transgressions;
>
> (3) singling him out for a meeting on his third day at work to warn him that he would be terminated if he wrote additional letters complaining about retaliation;
>
> (4) failing to deduct union dues from his paycheck;

(5) wrongfully withholding unspecified money from his paycheck and refusing to directly deposit his paychecks; and

(6) refusing to reimburse him for certain insurance costs and 401(k) costs and penalties he incurred due to his February 28, 2008 termination.

Pesek's Opp'n Br. ("Doc. 58") at 8.

On June 9, 2010, Pesek filed a four-count Complaint alleging violations of Title VII and the Illinois Human Rights Act ("IHRA"). Caterpillar moves for partial summary judgment against only those portions of Pesek's retaliation claims (Counts II and IV) complaining of conduct taking place after Pesek's termination on February 28, 2008. Caterpillar admits that there are genuine issues of material fact with respect to Pesek's claims of retaliation occurring prior to his discharge. Caterpillar's Reply Br. ("Doc. 63") at 1.

## LEGAL STANDARD

A party is entitled to summary judgment if all the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under governing law." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). A genuine dispute as to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001). When considering a summary judgment motion, the Court construes all facts and reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Parties may move for summary judgment on any one or more claims or defenses – or parts of claims or defenses. Fed. R. Civ. P. 56(a).

**DISCUSSION**

Pesek brings claims for unlawful retaliation under both Title VII and the IHRA. The necessary elements for retaliation claims under the two statutes are the same. *See Hoffelt v. Ill. Dep't of Human Rights*, 867 N.E.2d 14, 17-18 (Ill. Ct. App. 2006) (employment discrimination claims under the IHRA are analyzed using the same framework as claims under Title VII); *Zaderaka v. Ill. Human Rights Comm'n*, 545 N.E.2d 684, 687 (Ill. 1989) (same). Title VII prohibits an employer from discharging, retaliating, or otherwise discriminating against an individual because of that individual's sex, and sexual harassment can constitute sex discrimination. 42 U.S.C. § 2000e-2(a); *E.E.O.C. v. Mgmt. Hospitality of Racine, Inc.*, 666 F.3d 422, 432 (7th Cir. 2012) ("A sexually hostile or abusive work environment is a form of sex discrimination under Title VII of the Civil Rights Act of 1964.").

Pesek seeks to establish Caterpillar's retaliation via the "direct method" of proof.[1] Under that method, Pesek must establish: "(1) that [he] engaged in a statutorily protected activity, (2) that [he] suffered a materially adverse action by [his] employer, and (3) that there was a causal link between the two." *Benuzzi v. Bd. of Educ.*, 647 F.3d 652, 664 (7th

---

[1] Under the alternative "indirect method" of proof, Pesek would have to offer evidence establishing a *prima facie* case of retaliation by showing that he: (1) engaged in statutorily protected activity; (2) suffered a material adverse action; (3) met the employer's legitimate expectations; and (4) was treated less favorably than similarly situated employees who did not engage in the statutorily protected activity." *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008). If he were able to make the *prima facie* showing, the burden would then shift to Caterpillar to present evidence of a legitimate, non-retaliatory, reason for its action(s). Pesek has not alleged facts regarding the treatment of similarly situated employees, and relies solely on the direct method of proving his retaliation claims.

Cir. 2012).[2]  Pesek bears the burden of proof on each element of the claim.  *Silverman v. Bd. of Educ.*, 637 F.3d 729, 733, 734 n. 3 (7th Cir. 2011).

The parties do not dispute that Pesek meets the first element—in reporting the alleged harassment and filing his IDHR charges, he engaged in protected conduct. Opening Br. ("Doc. 60") at 4.  But Caterpillar argues that Pesek fails to establish the second and third required elements because (1) his post-discharge allegations do not amount to a materially adverse action, and (2) he cannot establish the requisite causation.[3]

The Court concludes that a reasonable jury could find that, taken together, Pesek's allegations of retaliation after his termination on February 28, 2008 constitute a materially adverse action.  But because Pesek has not produced evidence sufficient to permit a reasonable jury to find that Caterpillar's actions were *caused by* his engagement in protected activity, his claims of post-termination retaliation cannot survive summary judgment.

---

[2] Caterpillar's brief misstates this standard, asserting that Pesek must present evidence of "an adverse employment action."   Doc. 60 at 4.   As discussed further below, in *Burlington Northern,* the Supreme Court held that retaliation claims require only proof of a "materially adverse action" by the employer; that action does not have to affect the plaintiff's employment status or conditions.

[3] Caterpillar also argues that Pesek failed to exhaust his administrative remedies by filing an additional administrative charge against Caterpillar for retaliating against him for filing the previous administrative charges.  But the Seventh Circuit has adopted as an exception to the exhaustion rule, clarifying "that a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge."  *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989), *superseded on other grounds by statute*, *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1119-20 (7th Cir. 1992); *see also Horton v. Jackson Cnty. Bd. of Cnty. Comm'rs*, 343 F.3d 897, 898 (7th Cir. 2003). Because Pesek's retaliation claim falls within this exception, Caterpillar's exhaustion argument fails.

### 1. Caterpillar's Post-Termination Actions

Pesek alleges that Caterpillar's actions after his termination and subsequent return to work collectively constitute a materially adverse action. "'Materially adverse actions' are those that might dissuade a reasonable employee from engaging in protected activity." *Benuzzi*, 647 F.3d at 665; *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). This category is broader than the "adverse employment actions" which are required to sustain a discrimination claim, *Benuzzi*, 647 F.3d at 665, but "trivial harms," "petty slights," and "minor annoyances" generally do not qualify. *Burlington*, 548 U.S. at 68. Although "context matters," the standard refers to actions that might dissuade a *reasonable* employee because "the provision's standard for judging harm must be objective." *Id.* at 68-69. And "the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint." *Id.* at 69.

The most significant action Pesek identifies as a materially adverse action is Caterpillar's refusal to pay for the health insurance expenses he incurred during the period of his termination. Pesek maintains that Caterpillar refuses to pay him sums due and owing under the arbitration award (specifically, the amounts he paid for health insurance during the period between his termination and reinstatement, which Pesek calculates to be $3,044). If Caterpillar owed and refused to pay that amount, it plainly would not be unreasonable for a jury to conclude that its conduct was materially adverse to Pesek. But Pesek has not adduced evidence that would permit a jury to conclude that Caterpillar was required to reimburse Pesek for those costs. The arbitration award stated that Caterpillar must "make [Pesek] whole for all pay *and contractual benefits* which he would have received had he not been discharged," Doc. 57-7 at 13 (emphasis added), and Pesek has not offered evidence to establish whether he was contractually entitled to

receive payment of health insurance costs. Caterpillar maintains that the he is not, asserting that the collective bargaining agreement ("CBA") with Pesek's union "does not include Caterpillar's employee benefit plans (e.g., health care, 401(k) plan)." Doc. 63 at 5. Neither party has furnished the CBA, but it is Pesek's burden as the plaintiff and party opposing summary judgment to adduce evidence sufficient to create a genuine issue of fact as to Caterpillar's obligation to pay such costs. As the summary judgment record stands, there is no evidence in the record on which a jury could reasonably conclude that Caterpillar was required to reimburse Pesek for the out-of-pocket health insurance costs he incurred during the period of his termination and, accordingly, a jury could not reasonably conclude that it was required to do so.[4]

If considered individually, the remainder of Pesek's post-termination allegations of retaliation consist—as Caterpillar argues—entirely of "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68. Pesek alleges that Caterpillar mailed important correspondence including paychecks and a notice of recall to the wrong address, but does not submit evidence showing that this action caused him any harm whatsoever. He has offered no evidence that he failed to receive any of his mail and no evidence of any adverse consequence befalling him as the result of the temporary misdirection of his mail. That some

---

[4] For much the same reason, Pesek's complaint about costs he incurred due to having an outstanding 401(k) loan at the time he was terminated, Doc. 56 ¶ 40; Doc. 57-4 at 9, also fails to establish a materially adverse action. Pesek claims that he borrowed from his 401(k) account prior to being terminated, and was unable to repay the loan after losing his job. Doc. 57-4 at 9. This allegedly caused him to incur taxes and penalties. But Pesek fails to adduce any evidence showing that Caterpillar was required to reimburse those costs. The arbitrator's award did not explicitly require it to reimburse these or other consequential damages Pesek suffered due to his termination. Because Pesek fails to show that Caterpillar was obligated to reimburse his 401(k) costs, its refusal to pay those costs cannot be deemed a materially adverse action.

correspondence was sent to the wrong mailing address, standing alone, is not a materially adverse action that would dissuade a reasonable employee from engaging in protected activity. Similarly, Caterpillar's alleged failure to deduct Pesek's union dues, where Pesek does not claim that the failure caused him to lose his union membership or suffer any other harm, is by itself a "minor annoyance." The same can be said for Pesek's claim that Caterpillar improperly deducted other unspecified funds from, and refused to directly deposit, his paycheck; he identifies no untoward consequences that resulted from these acts. And Pesek's claims that Caterpillar supervisors met with him on his first and third days after returning to work, orally warning him against engaging in prohibited conduct, also fail to establish, on their own, any materially adverse action. There is no evidence that Caterpillar ever acted on the warnings delivered (Pesek continues to work at the Company) or that the fact that he received the warnings worked any detriment on his employment status, compensation, duties or responsibilities, or was otherwise the basis for any subsequent disadvantage Pesek endured.[5]

But Pesek argues that the Court should "consider *all* of [Caterpillar's] pre and post-discharge actions when determining whether its actions were materially adverse to Plaintiff," claiming that when considered collectively Caterpillar's actions "do in fact rise to the level of actionable retaliation." Doc. 58 at 9. The Seventh Circuit has previously left open the possibility that a "plaintiff might have a cognizable claim of retaliation

---

[5] "Generally, [even] written warnings, standing alone, do not constitute materially adverse actions." *Benuzzi*, 647 F.3d at 665. Although under some circumstances, the issuance of warnings to an employee may constitute a "materially adverse action" sufficient to support a retaliation claim, *see, e.g.*, *Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d 840, 849 (7th Cir. 2007), a jury's conclusion that a bare, oral, warning constitutes a "materially" adverse action sufficient to dissuade someone from reporting sexual harassment would not, in the Court's view, be reasonable in the absence of any evidence that the Company ever acted on the warning in any fashion.

based on acts which, although seemingly appropriate and nondiscriminatory when considered in isolation, bespeak retaliation when considered together." *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 483 n. 7 (7th Cir. 1996). *Cf. Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008) (observing, in context of sexual harassment claim, that "[i]f each harassing act had to be considered in isolation, there would be no claim even when by virtue of the cumulative effect of the acts it was plain that the plaintiff had suffered actionable harassment."). Caterpillar does not dispute that its actions may be considered collectively, asserting that whether "[v]iewed individually or collectively, the conduct alleged fails to meet the standard for actionable retaliation." Doc. 63 at 2. Accordingly, the Court will consider the allegedly retaliatory actions collectively as a single campaign of harassment in assessing whether Pesek was subjected to a "materially adverse action."

Viewed collectively, the Court concludes that a reasonable jury could find that a campaign of harassment comprising the allegedly retaliatory post-termination actions by Caterpillar constitutes a "materially adverse action" sufficient to give rise to a retaliation claim under Title VII.[6] As the Seventh Circuit has repeatedly affirmed in the analogous and underlying context of sexual harassment claims,

> Sexual harassment serious enough to constitute unlawful discrimination on grounds of sex is often a cumulative process rather than a one-time event. In its early states it may not be diagnosable as sex discrimination, or may not cross the threshold that separates the nonactionable from the actionable, or may not cause sufficient distress to be worth making a federal case out of . . . .

---

[6] Because Caterpillar's motion addresses only post-termination conduct, and because the Court concludes that there is a fact issue as to whether that conduct is materially adverse, the Court does not address any issue pertaining to the pre-termination conduct that is alleged to be materially adverse.

*Limestone Development Corp,* 520 F.3d at 801 (7th Cir. 2008) (quoting *Galloway v. General Motors Serv. Parts Operations,* 78 F.3d 1164, 1166 (7th Cir. 1996). This rationale applies with equal force here. One minor annoyance (for instance, Caterpillar's failure to deduct union dues) may be relatively innocuous and unlikely to dissuade any employee from reporting harassment. However, a series of repeated minor annoyances could conceivably blossom into a materially adverse action significant enough to convince an employee not to report sexual harassment in order to avoid a continuing stream of "trivial" annoyances. A "death by a thousand cuts" is still fatal, and the Court cannot find as a matter of law that no reasonable jury could find that Pesek's allegations (if proven) collectively could have proven fatal to an employee's determination to report a claim of harassment. *See, e.g., Moore v. Cricket Comms., Inc.*, 764 F. Supp. 2d 853, 862 & n.8 (S.D. Tex. 2011) (whether "death by a thousand cuts" constituted materially adverse action necessary to establish retaliation claim held to be fact dispute for jury).

### 2. Retaliatory Animus

Although the Court believes that a jury could reasonably conclude that Caterpillar's post-termination actions collectively amounted to a materially adverse action, Pesek has failed to offer evidence sufficient to provide a basis on which a jury could conclude that there was a "causal link" between his protected conduct and Caterpillar's post-termination materially adverse action. To establish causation, Pesek must present either direct evidence (essentially an admission that Caterpillar acted because of Pesek's protected conduct) or a "'convincing mosaic of circumstantial evidence' permitting that same inference." *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 570 (7th Cir. 2012). Pesek offers no direct evidence of retaliatory intent and therefore relies solely on circumstantial evidence.

The Seventh Circuit recognizes three categories of circumstantial evidence available to a plaintiff using the "convincing mosaic" approach. A plaintiff may show (1) "suspicious timing, ambiguous statements oral or written, . . . and other bits and pieces from which an inference of [retaliatory] intent might be drawn;" (2) "evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently;" and/or (3) "evidence that the employer offered a pretextual reason for an adverse employment action." *Coleman*, 667 F.3d at 860 (internal citations omitted). Pesek does not offer any evidence related to similarly situated employees, but maintains that the timing of Caterpillar's post-termination actions, and its reliance on pretextual explanations for those actions, supports a reasonable inference of retaliatory intent.

"In egregious cases, suspicious timing alone might create a triable issue on causation. But it rarely does." *Milligan v. Bd. of Trustees of S. Illinois Univ.*, No. 10-3862, 2012 WL 2764971 at * 10 (7th Cir. July 10, 2012) (internal citations omitted); *see also Coleman*, 667 F.3d at 860 ("temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter"). This is not an egregious case. The allegedly retaliatory acts that are the subject of Caterpillar's motion occurred some 16 months after Plaintiff filed his IDHR administrative complaint in 2008. "A substantial time lapse between the protected activity and the adverse employment action 'is counter-evidence of any causal connection.'" *Filipovic v. K&R Express Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (four month delay between the plaintiff's filing of EEOC charges and his termination defeats retaliation claims); *see also Jean v. Walgreen Co.*, 887 F. Supp. 1007, 1013 (N.D.

Ill. 1994) (finding nine-month gap insufficient to show intentional retaliation where plaintiff relied solely on suspicious timing).

Pesek devotes much of the causation discussion in his response to arguing that *lack* of temporal proximity between the alleged retaliatory acts and the protected activity is not fatal to his post-reinstatement retaliation claims; temporal proximity, he argues is not a necessary requirement of a retaliation claim. Doc. 58 at 12. True enough, but his argument attempts to shift the burden of proof to defendant Caterpillar. Under the "direct method" of proof (which, again, is the method Pesek is using), it is plaintiff's burden to present sufficient evidence to create a jury question as to Caterpillar's retaliatory intent. The fact that actions by Caterpillar some 16 months after he filed an EEOC complaint had a materially adverse effect on Plaintiff provides no basis to infer that those actions were the product of retaliatory animus.

Pesek does try to span the considerable gap between his reports of harassment and Caterpillar's 2009 actions by arguing that Caterpillar launched its campaign of harassment at the "earliest opportunity"—*i.e.*, upon his reinstatement. Where an adverse action is taken at the first opportunity following a party's protected activity, the timing of the adverse action may potentially be "suspicious." *See, e.g., Trimble v. Alliance-Dekalb/Rock-Tenn Co.*, 801 F. Supp. 2d 764, 780 (N.D. Ill. 2011). But 2009 was decidedly not Caterpillar's first opportunity to retaliate against Pesek, who indeed alleges that Caterpillar's retaliation began as early as 2007 (Cmplt. ¶¶ 13-14) and included his 2008 termination. *Id.* ¶ 27.

Nor does the juxtaposition of Caterpillar's 2009 acts with Pesek's reinstatement permit an inference of retaliatory intent. There is nothing inherently suspicious about the

timing of any of the actions Pesek alleges to be retaliatory. Indeed, the timing of Caterpillar's alleged retaliatory actions is consistent with errors arising from the administrative activity that accompanies the hiring of new personnel (or the reinstatement of former personnel). And even if Pesek showed that Caterpillar owed him back health benefits (and as discussed above, he has failed to do so) the timing of Caterpillar's refusal to pay health benefits is not in the least suspicious—that refusal could only have come after the arbitrator had ruled. The Court therefore concludes that the timing of Caterpillar's actions is not sufficient to establish that Pesek's protected conduct *caused* any of the allegedly retaliatory actions Plaintiff has identified.

Pesek similarly fails to provide or identify evidence that would permit an inference that Caterpillar offered pretextual reasons for its alleged campaign of harassment. Pesek claims that Caterpillar's "ambiguous statements" and other "bits and pieces" of evidence might lead to an inference of retaliatory intent, Doc. 58 at 11, but Pesek fails to identify specifically the allegedly ambiguous statements or bits and pieces and his pretext argument is largely undeveloped and can be rejected on that basis alone. *See, e.g., Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 n. 1 (7th Cir. 2012) (holding that "perfunctory and undeveloped arguments unsupported by pertinent authority are waived"); *Minemyer v. B-Roc Representatives, Inc.,* 2010 WL 3787093, *1 (N.D. Ill. Sep. 21, 2010) (denying motion to reconsider denial of summary judgment based on argument that had been insufficiently presented on the summary judgment briefs).

In any event, the summary judgment record provided by the parties does not support Pesek's contention that Caterpillar's explanations for the 2009 acts at issue were

pretextual. Caterpillar claims that it sent correspondence to the wrong address and failed to deduct union dues because of "clerical errors."[7] Doc. 63 at 8. Pesek retorts that Caterpillar knew that these actions "jeopardized his employment status" and could have "resulted in him losing his union membership," Doc. 58 at 11, but these are merely potential repercussions of Caterpillar's actions, not evidence that Caterpillar's explanation is a pretext.[8] Moreover, as far as the record shows, Caterpillar corrected these problems in short order following his reinstatement. Pesek offers no evidence that the problem with his pay took unusually long to resolve or that it was resolved in a manner that was not consistent with ordinary administrative processes. And though Pesek argues that his address was not corrected despite his "repeated requests," he does not allege that any correspondence was sent to the incorrect address after his recall letter. Doc. 56 at 12.

Caterpillar claims that it provided its oral warnings to Pesek in order to outline its expectations upon his return to work and in response to "inappropriate and combative" communications by Pesek to Caterpillar employees. Pesek argues that those meetings were "wholly unjustified disciplinary meeting[s]" in which Caterpillar threatened to fire him if he complained about retaliation. Doc. 58 at 11. The record evidence supports Caterpillar's explanation. The script from which Caterpillar's representative read at the first meeting relates to Caterpillar's expectations, not to any unjustified discipline, Doc. 67-9 at 14-15, and Pesek's letter which was discussed at the second meeting can be characterized fairly as "combative"—Pesek, writing to another employee of Caterpillar

_____

[7] With respect to the incorrect address, Caterpillar's claim of a clerical error is certainly plausible. The similarity between the incorrect street number (25563) and the correct street number (25663) indicates that the mix-up could easily have been a typo.

[8] The Court notes that Pesek did not *actually* suffer these harms.

regarding the incorrect address, stated: "It is important you understand; I do NOT believe this is an act of incompetence. I feel it IS an intentional and deliberate attempt to misdirect my important Caterpillar documents." Doc. 57-3 at 51. More to the point, these materials do not provide a sufficient basis to infer that Caterpillar's purpose in holding the meeting was to further a campaign of retaliation against Pesek.

As for its refusal to reimburse Pesek for the health insurance costs he incurred during the period between his termination and reinstatement, Caterpillar maintains that it has not reimbursed Pesek for those costs because it is not legally obligated to pay those costs, not because it is retaliating against Pesek. Its argument in that regard depends on the terms of the CBA regarding the arbitrator's authority, but again, the CBA is not in the record before the Court. It is Pesek's burden to provide an evidentiary basis from which a jury could reasonably conclude that Caterpillar's proffered explanation for not reimbursing his health insurance costs was pretextual, and he has failed to do so.

In short, no reasonable jury could find, on the evidence before the Court, that Caterpillar's post-termination conduct was retaliation *caused by* Pesek's protected conduct. Therefore, Pesek's post-termination allegations of retaliation must fail.

\* \* \*

For the foregoing reasons, the Court grants Caterpillar's motion for partial summary judgment on Counts II and IV of Pesek's Complaint insofar as Pesek claims that Caterpillar's actions subsequent to his termination on February 28, 2008 constituted unlawful retaliation. Counts I and III of Pesek's Complaint, along with the portions of Counts II and IV based on unlawful retaliation allegedly taking place on or before

February 28, 2008, were not the subject of Caterpillar's motion for partial summary judgment, and therefore those claims survive.

Date: July 27, 2012

_____

John J. Tharp, Jr.

U.S. District Judge